**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

IVAN F.M.,

Petitioner,

v.

TODD BLANCHE, *U.S. Attorney General*;

ERIC KLANG, *Sheriff, Crow Wing County*;

DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*;

DAVID VENTURELLA, *Acting Director, U.S. Immigration and Customs Enforcement*;

MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*,

Respondents.

Civil No. 26-4012 (JRT/DLM)

**MEMORANDUM OPINION AND ORDER GRANTING MOTION TO ENFORCE**

---

Steven T. Appelget, **APPELGET LAW OFFICE**, 1102 Grand Avenue, Saint Paul, MN 55105, for Petitioner.

David W. Fuller, Derek Ganzhorn, and Pedro Del Valle, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Federal Respondents.

On September 30, 2026, the Court granted Petitioner Ivan F.M.'s petition for a writ of habeas corpus and ordered his release from detention after concluding that Respondents did not lawfully effectuate a warrantless arrest. On October 1, 2026, at 8:40

a.m., U.S. Immigration and Customers Enforcement ("ICE") officers escorted Petitioner out a rear exit of the Bishop Henry Whipple ("Whipple") building. At 8:41 a.m., ICE officers "encountered" Petitioner at the Whipple building, served him with an I-200 administrative warrant, and placed him under arrest. He is currently detained in the Freeborn County Jail. Petitioner filed a Motion to Enforce the Judgment granting Petitioner's habeas corpus petition, arguing that he was never released from custody and thus that Respondents violated the Court's Order.

The Court concludes that Petitioner was never released from custody, and thus ICE's post-hoc I-200 administrative warrant does not cure the initial illegal arrest and detention, nor does it provide an independent basis for Petitioner's re-detention. Because the Court refuses to condone or participate in a process that allows Respondents to detain first and paper over their procedural failures later, the Court will grant the motion to enforce, order release, and require Respondents provide notice and a pre-deprivation hearing before any efforts to arrest Petitioner under 8 U.S.C. § 1226.

## BACKGROUND

### I. FACTS

Petitioner is a citizen of Guatemala who entered the United States without inspection in August 2019. (Am. Pet. for Writ of Habeas Corpus ("Am Pet.") ¶ 18, Sept. 16, 2026, Docket No. 5; Decl. of Randy Langworthy ("Langworthy Decl.") ¶¶ 4, 5, Ex. A., Sept. 17, 2026, Docket No. 7.)

ICE officers conducting fugitive operations in Columbia Heights noticed Petitioner's truck at a gas station on September 11, 2026. (Langworthy Decl. ¶ 5.) ICE officers ran a records check and learned that the truck was registered to Petitioner and that Petitioner did not have lawful immigration status in the United States. (*Id.*) ICE officers effectuated a warrantless arrest based on the officers' belief that Petitioner would escape before a warrant could be obtained and executed. (*Id.* ¶ 6–7.) On September 15, 2026, Petitioner filed a petition for writ of habeas corpus challenging the lawfulness of his detention, which he amended on September 16. (Docket Nos. 1, 5.) The Court concluded that Respondents failed to show that Petitioner was likely to escape, which in turn meant that Respondents failed to comply with the requirements in 8 U.S.C. § 1357 for arresting a noncitizen without a warrant. (Order ("Sept. Order") at 7, Sept. 30, 2026, Docket No. 14.) Consequently, on September 30, 2026, the Court ordered Petitioner's release. (*Id.* at 8.)

The same day Petitioner was arrested, September 11, 2026, ICE officers obtained a Notice to Appear. (Decl. of Javan Smith ("Smith Decl.") ¶¶ 5, 15, Ex. D., Oct. 9, 2026, Docket No. 26.)

On October 1, 2026, the day after the Court ordered Petitioner's release, an ICE officer served Petitioner with a release letter and returned his property. (*Id.* ¶¶ 8–9, Ex. C.) At 8:40 a.m., two ICE officers shepherded Petitioner out a rear, non-public exit of the Whipple Building. (*See id.* ¶¶ 10–11.) When Petitioner reached the front of the building at 8:41 a.m., ICE officers served Petitioner with an I-200 administrative warrant and

placed him under arrest. (Decl. of John Barham ("Barham Decl.") ¶ 6, Oct. 8, 2026, Docket No. 23; Smith Decl. ¶ 13, Ex. B.) Petitioner did not reach a public street, did not meet his family or counsel, and did not go anywhere of his own volition before ICE officers re-arrested him. (Barham Decl. ¶ 7.) ICE officers brought Petitioner back inside the Whipple building before moving him to Freeborn County Jail. (Smith Decl. ¶¶ 14–15.)

## II. PROCEDURAL HISTORY

After Petitioner was placed in ICE custody on October 1, 2026, Petitioner's counsel filed two status reports with the Court (Oct. 1, 2026, Docket No. 15, 16) requesting that the Court order Petitioner's immediate release and to set a hearing for Respondents to show cause why they should not be held in contempt of the Court's release order (Sept. Order at 8). The Court ordered Respondents[1] to respond to the status updates. (Oct. 2, Docket No. 17.) Respondents did not engage with Petitioner's arguments. Instead, Respondents submitted a letter informing the Court only that Petitioner was released at 8:40 a.m. on October 1, 2026 and "subsequently arrested on an I-200 administrative warrant." (Oct. 6, 2026, Docket No. 19.)

Petitioner then filed an Emergency Motion to Enforce Order. (Oct. 7, 2026, Docket No. 20.) The Court ordered that Respondents submit a reasoned memorandum of law and fact (Oct. 8, 2026, Docket No. 24) to which Respondents timely responded (Oct. 9,

[1] "Respondents" here includes only Federal Respondents, as no response was submitted on behalf of Eric Klang.

2026, Docket No. 25). Petitioner submitted a memorandum in response, in compliance with the Court's Order (Sept. Order at 8) and as a traverse under 28 U.S.C. §§ 2243 and 2248 (Pet'r's Reply, Oct. 9, 2026, Docket No. 27).

## DISCUSSION

The Court considers first whether Petitioner was meaningfully released from detention and then assesses whether the subsequent I-200 administrative warrant provides an independent basis for Petitioner's continued detention.

### A. What Constitutes Release

Petitioner asserts that Respondents violated the Court's release order because the one-minute period in which Petitioner walked from the back to the front of the Whipple building, never leaving ICE's hands, was not a release at all. This situation is akin to *Pablo F. v. Blanche*—there, as here, ICE failed to execute a lawful warrantless arrest and then secured and served a Form I-200 administrative arrest warrant while Petitioner was detained. Civ. No. 26-3889, 2026 WL 2874903, at *2 (D. Minn. Sept. 24, 2026). Pablo F. was also ordered released and was then immediately re-arrested and detained. *Id.* at *1. The Court in *Pablo F.* concluded no meaningful release occurred. *Id.* at *2–3. For similar reasons, the Court concludes that Respondents did not release Petitioner here.

Respondents contend that ICE officers released Petitioner in accordance with the Court's Order. Their argument is grounded in the definition of release. The plain meaning of "release" is "the 'action of freeing or the fact of being free from restraint of

confinement.'" (Resp. at 3 (quoting *Release*, *Black's Law Dictionary* (9th ed. 2009).) In Respondents' view, "any conduct" in accordance with that definition is "meaningful"—essentially, ICE officers allowing a habeas petitioner to take one step outside the Whipple building constitutes release under the plain meaning of the term. (*Id.*) Respondents do not otherwise argue what conduct constitutes release as a matter of law.

The Court rejects this argument. Despite Respondents' attempts to distinguish it, *Pablo F.* correctly analyzes release as the opposite of the state of being in custody. 2026 WL 2874903, at *2. A habeas petitioner is in custody when he or she faces "restraints not shared by the public generally." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). An individual is certainly in custody when "a petitioner's freedom of movement l[ies] within the discretion of the government." *U.S. ex rel. Bailey v. U.S. Commanding Officer of Off. of Provost Marshal, U.S. Army*, 496 F.2d 324, 325 (1st Cir. 1974). Courts "very liberally" assess whether a habeas petitioner is in custody. *Maleng v. Cook*, 490 U.S. 488, 492 (1989). "A person need not be physically imprisoned to be in custody under the statute." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). More broadly, Courts also consider an individual to not be in custody when, under the totality of the circumstances, a "reasonable person would feel free to end the encounter and leave." *Pablo F.*, 2026 WL 2874903, at *2 (collecting cases).

Petitioner is—and has at every time since his initial arrest been—in custody under all these assessments. Being escorted out a non-public door of a federal building

surrounded by ICE officers—even if that exit did not have pedestrian barricades—qualifies as a restraint not shared by the general public. And no reasonable person "would have felt free to leave when exiting the detention facility and immediately being stopped by ICE officers." *Id.* at *3. Allowing an individual to step one foot outside a cell is not release in any sense of the term. Even accepting Respondents' definition, there was no release here. Release requires freedom from restraint, defined as "confinement, abridgment, or limitation." *Restraint*, *Black's Law Dictionary* (12th ed. 2024). Respondents limited and abridged Petitioner's freedom of movement when officers took him out a non-public exit and had ICE officers ready to encounter him again within a minute, before Petitioner ever left the Whipple facility or reached a public street. Accordingly, the Court concludes that Petitioner was not released in accordance with the Court's Order.

**B. Post-Hoc Documents**

Respondents characterize Petitioner's arrest outside of the Whipple building one minute after being escorted through the rear exit as being "based on new circumstances, namely the issuance of an I-200 administrative warrant" to suggest that his entry back into the Whipple building constitutes a "new spell of detention"—this time a spell that is legally permissible. There are three flaws in this reasoning.

**First**, as the Court just concluded, Petitioner was never released, meaning there were no new circumstances on which Petitioner was detained. "An arrest is not 'on a warrant' when the Government creates a warrant after the arrest occurs." *Tabora-*

*Brizuela v. Mullin*, Civ. No. 26-7010, 2026 WL 2908095, at *5 (E.D. Pa. Sept. 28, 2026). To suggest ICE officers happened to encounter Petitioner on his way to the public-facing Whipple building entrance ignores the reality of the deprivation Petitioner faced and would "render habeas relief meaningless." *Pablo F.*, 2026 WL 2874903, at *2. Simply put, it is not a "new spell" when Respondent's never ended Petitioner's first, unlawful, detention.

**Second** and relatedly, the Court rejects the notion that ICE officers can detain an individual without a warrant and without "constitutionally required probable cause," *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010), and then use the time that individual is unlawfully detained to obtain a warrant, control the conditions of release, and serve the warrant anew to attempt to cure the initial failure after the fact. Accepting this process "would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications." *Zheng v. Rokosky*, 826 F. Supp. 3d 545, 563 (D.N.J. 2026). As discussed further below, because the Court orders the release, the Court could be seen as effectively participating in, perhaps even condoning, such a transformation—an action that the Court emphatically declines to take.

Securing and serving a Notice to Appear and then an I-200 administrative warrant may seem like a mere technical requirement. But it is much more. This requirement strikes at the heart of due process. The Due Process Clause protects all persons, including noncitizens, from deprivation of "life, liberty, or property, without due process of law."

U.S. Const. amend. V. Freedom from detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Thus, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The requirement to secure a warrant prior to arrest—or in the case of warrantless arrest, to have probable cause that a noncitizen is in violation of immigration laws and likely to escape before a warrant can be obtained—is how this country protects that vital liberty interest. It is no mere procedural technicality. "An arrest is not justified by what the subsequent search discloses[.]" *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 412 (E.D.N.Y. 2026) (alteration in original) (quoting *Henry v. United States*, 361 U.S. 98, 103 (1959)). This is so because arresting first and finding the reason for the arrest later creates "an inevitable pressure to 'justify' or find some legal basis for removal proceedings, which heightens the risk of error and in other cases, something far worse." *Tabora-Brizuela*, 2026 WL 2908095, at *5 (quoting *Yeleshev v. Larocco*, Civ. No. 26-2294, 2026 WL 1353806, at *3 (E.D.N.Y. May 14, 2026), *appeal docketed*, No. 26-1898 (2d Cir. July 14, 2026)). Thus, securing a warrant after an arrest was already made, or a "post-hoc warrant," is "constitutionally problematic." *Parada Cruz*, 837 F. Supp. 3d at 410. It is also "statutorily prohibited under the INA." *Id.* (citing 8 C.F.R. § 1236.1).

**Third** and crucially, suggesting a post-hoc warrant can cure the illegalities of a prior arrest attempts to make the Court a partner in the subsequent arrest and detention. What occurred here highlights this risk. ICE officers improperly effectuated a warrantless arrest. That same day, ICE issued a Notice to Appear. Then, after the Court ordered release "as soon as practicable" (Sept. Order at 8), ICE secured and issued a warrant to Petitioner. ICE officers were able to use the time that Petitioner was improperly detained to attempt to circumvent the original deficiencies and re-start the process fresh, but this time ICE officers could use their ability to control the conditions of release—with timing set by the Court—to ensure that officers would have a second chance to arrest and detain Petitioner. The Court will not "permit Respondents to flout [legal and constitutional requirements] and detain Petitioner by obtaining a warrant at their leisure" because doing so would "render such requirements a dead letter." *Quezada-Estrada v. Lyons*, Civ. No. 26-01599-NYW, 2026 WL 1361880, at *6 (D. Colo. May 15, 2026). A court-ordered release for a habeas petitioner is not an opportunity to cure prior wrongs and certainly cannot be an opportunity to further flout legal and constitutional requirements.

Allowing post-hoc warrants grants Respondents the ability to "detain first, and justify later." *Quezada-Estrada*, 2026 WL 1361880, at *5; *accord Vang v. Bondi*, Civ. No. 26-01381, 2026 WL 458195, at *3 (D. Minn. Feb. 18, 2026). This practice violates immigration laws and "offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, Civ. No. 25-8250, 2025 WL 2961626, at *5 (S.D.N.Y. Oct.

19, 2025), *appeal withdrawn sub nom. Gonzalez v. Noem*, Civ. No. 26-237, 2026 WL 1211500 (2d Cir. Feb. 17, 2026). "The rule of law is built upon multiple procedural safeguards. The requirement of a warrant is one of the most fundamental, and one that should be consistently enforced by the courts." *Tabora-Brizuela*, 2026 WL 2908095, at *5. This Court joins many others in doing so today.[2] Because Respondents did not allow Petitioner to be released, the post-hoc I-200 administrative warrant cannot justify his continued detention.

The Court does not suggest that Respondents are never able to re-arrest or re-detain a noncitizen. *See Abelardo M.-G. v. Easterwood*, Civ. No. 26-3479, 2026 WL 2969690, at *2 (D. Minn. Oct. 2, 2026) (holding that a habeas petitioner who spend over a month free from custody was "meaningfully release[d]"). But no meaningful release occurred here, and as such, the post-hoc administrative warrant cannot serve as the basis for Petitioner's subsequent arrest and detention.

**C. Remedy**

Habeas corpus "is, at its core, an equitable remedy." *Boumediene v. Bush*, 553 U.S. 723, 780 (2008) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). The adaptable

[2] This practice appears to be part of a worrying national trend. *See, e.g.*, *Parada Cruz v. Mullin*, 837 F. Supp. 3d 404; *Pablo F.*, 2026 WL 2874903; *Tabora-Brizuela*, 2026 WL 2908095; *Martiniez Alaniz v. Slaughter*, Civ. No. 26-298, 2026 WL 2874994 (D. Mont. Sept. 24, 2026); *Rodriguez v. Warden, Imperial Reg'l Det. Ctr.*, Civ. No. 26-4775, 2026 WL 2665542 (S.D. Cal. Sept. 9, 2026); *Perez Chacon v. Mattos*, Civ. No. 2:26-01061, 2026 WL 1960905 (D. Nev. July 7, 2026); *Quezada-Estrada v. Lyons*, 2026 WL 1361880.

remedy allows a reviewing court, after proper consideration, to "dispose of the matter as law and justice require." *Fay v. Noia*, 372 U.S. 391, 438 (1963) (quoting 28 U.S.C. § 2243). While immediate release is the typical remedy for unlawful detention, *Munaf v. Geren*, 553 U.S. 674, 693 (2008), "[a] habeas court is thus authorized to 'fashion appropriate relief other than immediate release' . . . in order to ensure an effective remedy for unlawful detention," *Diallo v. Scott*, Civ. No. 2:26-00975, 2026 WL 1843102, at *8 (W.D. Wash. June 26, 2026) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973)).

The Court concludes, given what occurred after its September 30 Order that mandating release, alone, would "provide Federal Respondents with yet another opportunity to violate this Court's Orders and due process." *Perez Chacon v. Mattos*, Civ. No. 2:26-01061, 2026 WL 1960905, at *6 (D. Nev. July 7, 2026). This concern is compounded by Respondent's failure to engage in good faith with the Court's previous order after Petitioner's re-arrest. Thus, the Court will adopt equitable remedies and will require notice and a pre-deprivation bond hearing to ensure that Federal Respondents abide by due process in the event they seek Petitioner's re-detention under 8 U.S.C. § 1226 in the future.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Ivan F.M.'s Emergency Motion to Enforce Order or, in the Alternative, for an Order to Show Cause (Docket No. [20]) is **GRANTED** as follows:

1. Respondents shall **RELEASE** Petitioner **within 24 hours**, in Minnesota, at a public, non-secure location, with at least 12 hours' notice to counsel and to immigration counsel John Barham.

2. Respondents must release Petitioner with all personal effects, such as driver's licenses, passports, or immigration documents, and **without conditions** such as location tracking devices.

3. Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations.

4. The parties shall provide the court with a status update concerning the status of Petitioner's release by **no later than 4:00 p.m. on November 2, 2026**. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation by **no later than 5:00 pm on November 5, 2026**.

DATED: October 30, 2026
at Minneapolis, Minnesota.

/s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge